| | | |
|---|---|---|
| **Management Certification -<br>Residential Care Facility**<br>Section 232 | **U.S. Department of Housing<br>and Urban Development**<br>Office of Residential<br>Care Facilities | OMB Approval No. 2502-0605<br>(exp. 03/31/2014) |

**Public reporting** burden for this collection of information is estimated to average 0.5 hours. This includes the time for collecting, reviewing, and reporting the data. The information is being collected to obtain the supportive documentation which must be submitted to HUD for approval, and is necessary to ensure that viable Projects are developed and maintained. The Department will use this information to determine if properties meet HUD requirements with respect to development, operation and/or asset management, as well as ensuring the continued marketability of the properties. This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number.

**Warning:** Any person who knowingly presents a false, fictitious, or fraudulent statement or claim in a matter within the jurisdiction of the U.S. Department of Housing and Urban Development is subject to criminal penalties, civil liability, and administrative sanctions.

**Project Name:** Rosewood Care Center of Alton
**FHA Project No.:** 072-22088
**Borrower:** Alton Real Estate, Inc.
**Operator:** Bravo Care of Alton, Inc.
**Management Agent:** Midwest Administrative Services, Inc.

      **<u>Bravo Care of Alton, Inc., an Illinois corporation</u>** (Operator), and **<u>Midwest Administrative Services, Inc., an Illinois corporation</u>** (the Management Agent or Agent), make the following certifications and agreements to the United States Department of Housing and Urban Development (HUD) regarding certain services in connection with management of the above Healthcare Facility (as defined in the Borrower's Security Instrument).

A.     The Agent hereby certifies:
      1.    Agent shall comply with HUD requirements and contract obligations as applicable. Agent certifies that that no payments have been made to the Borrower (or Operator, as applicable) in return for awarding the management contract to the Agent, and that no such payments will be made in the future.
      2.    Agent will execute prior to endorsement, or within 30 days after receiving HUD approval (whichever is sooner), the proposed Services Agreement and amendment (Management Agreement or Agreement) in connection with the Project. The Agreement provides that the Agent will manage the Healthcare Facility for the term and fee described below. Changes in the fee will be implemented only in accordance with Program Obligations, as defined below.
      3.    Nothing in the Agreement conflicts with the terms and representations of this Certification.

B.     Terms of Agreement:

      1.    Term (Select One):
          ☐ Open-Ended
          ☒ Specified Term:   Start Date:   December 30, 2013

> Exhibit E:
> Management
> Certification

        End Date:  Automatically renewed annually each calendar year unless terminated by either party within 90 days of the end of each term. If Midwest does not get paid as it should pursuant to the agreement, it may terminate with 30 days prior notice.

2.  Fees:

  a.  Describe with specificity the services to be performed by the Agent for which it will be compensated:

    Agent shall provide administrative services including, but not limited to: Accounting and financial reporting services; Advertising production and media selection; Audit, review or compilation procurement; Billing for resident services and products; Budget reporting, analysis and monitoring; Credit and treasury services; Employee benefits, insurance, health plan, retirement plan administration Financial statement preparation and analysis; Funds, receipt, holding and disbursing; Insurance policy procurement; Legal counsel, document preparation and representation only as permitted under applicable law); Marketing services; Medicaid and Medicare cost report, procurement; Payroll processing and tax administration; Purchasing system administration, price negotiation and group agreements; and Tax return preparation procurement.

  b.  Describe the Agent's compensation in detail. This compensation must be reasonable based upon the level of services to be performed by Agent and consistent with industry practice.

    **<u>Administrative Fees</u>**

    a)  <u>Base Administrative Fee.</u> As Midwest's compensation for its services hereunder, Bravo shall pay Midwest a Base Administration Fee during the term of this Agreement equal to $3,000 per month, prorated and payable monthly. The Base Administration Fee shall be due and payable by Bravo on the first day of each calendar month for the previous month, due upon **invoice,** during the term of this Agreement;

    b)  Incentive Administration Fee. In addition to the Base Administration Fee, Bravo shall pay to Midwest an Incentive Administration Fee, to reflect the increased expense, staffing, documentation, incident to the administrative services provided with respect to the larger number of transactions associated with accounting and financial reporting services; the greater media budget associated with advertising production and media selection; audit, review or compilation procurement; increased numbers associated

with billing for resident services and products; budget reporting, analysis and monitoring; the greater responsibility for credit and treasury services; the higher number of likely employees and cost f employee benefits, insurance, health plan, retirement plan administration;, the volume of transactions with funds, receipt, holding and disbursing; greater costs associated with Payroll processing and tax administration; the likelihood or needing a more robust purchasing system administration, price negotiation and group agreements. The Incentive Administration Fee shall be payable quarterly, equal to the following percentage of Total Revenues from the Property's operation less the Base Administrative Fee:

| Rate | Total Revenues Category |
|------|-------------------------|
| 4.0% | Total Private Revenues |
| 6.0% | Total Medicare Revenues |
| 2.0% | Total Medicaid Revenues |

The Incentive Administration Fee shall be due and payable within thirty (30) days after the end of each three (3) month calendar period. Notwithstanding the foregoing, Bravo may invoice monthly in arrears provided that the Incentive Administrative fee would not exceed 5% of the net revenue for each monthly period. The Incentive Administration Fee when added to Base Fee-shall not exceed 5%of net revenue.

C. The Agent understands that, pursuant to Program Obligations, HUD has the right to require the termination of the Management Agreement upon certain defaults of certain loan documents relating to the Project. **Agent certifies that the Agreement is consistent with this right. Agent agrees that no fees may be earned or paid after HUD has given notice of termination of the Management Agreement and the time period of the effective date of such termination has occurred.**

D. The Agent agrees to:
1. Disburse management fees from the Healthcare Facility's income only after HUD has agreed to allow the Agent to manage the Healthcare Facility and has approved the management fee.
2. Comply with all applicable Program Obligations, including without limitation any and all regulatory agreements entered into in connection with the Project and any operating lease entered into by the Operator in connection with the Project.
3. Comply with all Program Obligations that relate to the management of the Healthcare Facility.
4. Comply with all Program Obligations regarding payment and reasonableness of management fees and allocation of management costs between the management fee and the Healthcare Facility's account.

5. Goods and services purchased or acquired in connection with the Healthcare Facility shall be reasonable and necessary for the operation or maintenance of the healthcare facility, and the costs of such goods and services incurred shall not exceed amounts normally paid for such goods and services in the are where the services are rendered or the goods are furnished, except as otherwise permitted or approved by HUD.

6. Exert reasonable effort to maximize Healthcare Facility income and to avail the Project of all discounts, rebates or commissions (including any sales or property tax relief granted by the State or local government), and similar money-saving techniques.

7. Invest the Healthcare Facility's funds to the extent required by and in accordance with Program Obligations and, to the extent Program Obligations may not require certain funds to be invested, take reasonable effort nevertheless to invest such funds unless the Borrower or Operator specifically directs the Agent not to invest those other funds.

8. Maintain insurance coverages in accordance with Program Obligations at all times.

E. The Agent agrees to:

1. Furnish a response to HUD's management review reports, physical inspection reports and written inquiries regarding the Healthcare Facility's annual financial statements or monthly accounting reports or other operational issues within five (5) business days or such further time as HUD may allow after receipt of the report or inquiry.

2. To the extent that Agent's role includes maintaining the Healthcare Facility's accounts, books and records, establish and maintain those accounts, books and records in accordance with Program Obligations and in a condition that will facilitate audit.

F. The Agent agrees that:

1. All records related to the operation of the Healthcare Facility, regardless of where they are housed, shall be considered the property of the Project.

2. HUD, the Government Accountability Office (GAO), and those agencies' representatives may inspect any records which relate to the Project's purchase of goods or services, the records of the Borrower, Operator and the Agent, and the records of companies having an identity-of-interest with the Operator and the Agent.

3. The following clause will be included in any contract entered into with an identity-of-interest individual or business for the provision of goods or services to the Project: "Upon request of HUD or (name of Borrower, Operator or Agent), (name of contractor or supplier) will make available to HUD, at a reasonable time and place, its records and records of identity-of-interest companies which relate to

goods and services acquired for the Project. Records and information will be sufficient to permit HUD to determine the services performed, the dates the services were performed, the location at which the services were performed, the time consumed in providing the services, the charges made for materials, and the per-unit and total charges levied for said services." The Agent agrees to request such records within five (5) business days of receipt of HUD's request to do so.

4. All Project accounts and receivables shall be the property of either the Borrower or the Operator, but not the Agent.

5. Except as otherwise provided in this Certification, all real and personal property relating to the Healthcare Facility and/or the Project, whether present or future, owned or leased, including but not limited to, tangibles, intangibles, choses in action, and goodwill, shall be the property of, and held in the name of, the Borrower or the Operator, but not the Agent.

6. All contracts relating to the Project with patients, residents, or third party payors shall be the property of, and executed in the name of, the Borrower or, if the Project is operated by a separate licensed Operator, in the name of the Operator, even if such contracts are executed by the Agent on behalf of the Borrower or Operator.

7. No funds may be advanced to the Healthcare Facility or Project by the Agent. No funds of the Agent may be commingled with funds of the Borrower or Operator.

8. Agent's compensation may not be enhanced by service fees, handling fees, processing fees, rebates, trade discounts, tax savings, kickbacks, etc. All such funds received from any source or derived from the operation of the facility shall be deemed Project funds.

9. Indemnity, subrogation, or hold harmless agreements shall have no effect and will not be allowed except with the specific approval of HUD.

10. The Agreement creates a principal/agent relationship between the Agent and the Borrower or Operator. The Agent owes the duties of a fiduciary to its principal. All actions of the Agent will be performed in conformity with applicable laws and regulations, including any and all licenses and permits relating to the Project, and Program Obligations, including without limitation, any contracts and other documents entered into by the Borrower or Operator. Such documents may include, but are not limited to, regulatory agreements, operating leases entered into by the Operator relating to the Project, and security agreements.

11. If the Agent appears on the Healthcare Facility's license, Agent will take no action to modify the license without HUD approval. In the event that the Agreement is terminated, the Agent will take all reasonable and necessary actions to preserve the rights and authorities under the license and transfer such rights and authorities to its successor. The Agent shall not reduce or expand, allow to be reduced or expanded, or cause the expansion or reduction of the bed capacity of the Healthcare Facility without the consent of HUD. Any change in the bed capacity without HUD approval shall be a violation of this Certification, the

Borrower's Regulatory Agreement, and the Operator's Regulatory Agreement, and, upon HUD's request, shall cause the termination of the Agreement.

12. Should the duties of the Agent include resident care and services, the Agent shall maintain professional liability insurance in compliance with the requirements set forth in Program Obligations, and shall provide reports on that coverage as required by Program Obligations.

13. Agent shall maintain records of its operations and make them available to the Operator, Lender, the U.S. Government Accountability Office (GAO), and/ or HUD, upon reasonable notice. All such records are and shall remain the property of the Project. Records will be sufficient to allow the parties to determine services performed, dates the services were performed, location at which the services were performed, the time consumed providing the services, and the charges made for materials and contract services. Agent will make the Healthcare Facility available for inspection by the Borrower, Operator, Lender, GAO, and HUD, or any agent of any such entity, upon reasonable notice.

14. Agent will not accept legal service on behalf of the Borrower or Operator, unless specifically authorized by the Borrower or Operator, respectively.

15. Agent will immediately advise Borrower and Operator of any potential claim for damages from any source, whether based upon contract, tort, levy, or otherwise. Agent will maintain all records related to any potential or actual claim in a secure location, and maintain the confidentiality of and records or communication related thereto.

16. To the extent the Agent has access to the information, and except as otherwise provided below or in Program Obligations, Agent shall electronically deliver, within two (2) business days after Agent's receipt thereof, to the assigned HUD personnel and Lender electronically, copies of any and all notices, reports, surveys and other correspondence (regardless of form) received by Agent from any governmental entity that includes any statement, finding or assertion that (i) Borrower, Operator (or any Operator principal, officer, director or employee), Agent, the Healthcare Facility, or any portion of the Project is or may be in substantive violation of (or default under) any of the Permits and Approvals or any governmental requirements applicable to the operation of the Healthcare Facility, (ii) any of the Permits and Approvals are to be terminated, limited in any way, or not renewed, (iii) any civil money penalty is being imposed in connection with the Healthcare Facility, or (iv) Borrower, Operator (or any Operator principal, officer, director or employee), Agent, the Healthcare Facility, or any portion of the Project is subject to any governmental investigation or inquiry involving fraud. Agent shall also deliver to the Project's HUD-assigned personnel and Lender, simultaneously with delivery thereof to any governmental entity any and all responses given by or on behalf of Borrower, Operator or Agent to any of the foregoing and shall provide to such HUD personnel and Lender, promptly upon request, such information regarding any of the foregoing as HUD or Lender may request. Unless otherwise requested by HUD, the reporting requirement of this provision shall not encompass (a) communications with

regulators relating solely to Licensed Nursing Facility surveys where the most severe citation level is at the "G" level or its equivalent (pursuant to CMS State Operations Manual, Chapter 7, as may hereafter be edited or updated, or any successor guidance) unless a citation at such level is either (i) unresolved from the two most recent consecutive prior surveys, or (ii) is a repeat violation having the same citation number. Moreover, unless otherwise requested by HUD or Lender, the initial communication from the Operator pursuant to this paragraph shall be a notice by email to the Lender describing the conduct cited, the scope and duration of remedy(ies) imposed, and the timelines for corrective actions. Then, unless otherwise requested by HUD or Lender, the next communication from the Operator shall be notification that the citations have been cleared by the issuing regulatory agency. The receipt by HUD and/or Lender of notices, reports, surveys, correspondence and other information shall not in any way impose any obligation or liability on HUD, Lender or their respective agents, representatives or designees to take (or refrain from taking) any action, and HUD, Lender and their respective agents, representatives and designees shall have no liability for any failure to act thereon or as a result thereof.

G.  The Agent certifies that any management agreement executed in connection with the Project does not or will not exempt Agent from gross negligence or willful misconduct.

H.  The Agent agrees to include the following provisions in the Agreement and to be bound by them:
    1.  The Agreement shall terminate without penalty upon failure to comply with the provisions of Management Certification to HUD (form HUD-9839-ORCF), or for other good cause, including without limitation for violations of the Borrower's Regulatory Agreement, Operator's Regulatory Agreement, and/or Master Tenant's Regulatory Agreement, if any, thirty days after HUD has mailed the Borrower or Operator a written notice of its desire to terminate the Management Agreement, as permitted by applicable law.

    2.  In the event that HUD determines that any of the Permits and Approvals reasonably necessary to operate the Healthcare Facility is at substantial and imminent risk of being terminated, suspended or otherwise restricted, if such termination, suspension or other restriction would have a materially adverse effect on the Project, the Management Agreement shall terminate immediately without penalty upon HUD's issuance of a notice of termination to the Borrower (or, as applicable, the Operator) and Agent.

    3.  If there is a conflict between the Management Agreement and Program Obligations, Program Obligations will prevail.

    4.  If the Management Agreement is terminated the Agent will immediately, not later than ten (10) calendar days from the effective date of the termination, give to the Borrower (or Operator, if applicable) all of the real and personal property in the Agent's possession or control, including without limitation any of the Project's cash, trust accounts, investments, books and/or records.

5. Any material amendment to the Management Agreement must be acceptable to HUD in accordance with Program Obligations.

I. Agent hereby agrees and Borrower (or Operator, as applicable) acknowledge and agree, that an additional Management Certification, Form HUD-9839-ORCF, executed by the appropriate parties by authorized signatories, must be submitted to HUD before any of the following actions take effect:
1. The expiration date of the Agreement is altered;
2. The Agreement is renewed;
3. Any new management agent is permitted to manage or operate the Healthcare Facility;
4. Any new management agent is permitted to collect a fee; or
5. Borrower and/or Operate undertake self-management of the Healthcare Facility.

J. The Agent agrees to:

1. Comply with all Federal, State, or local laws prohibiting discrimination against any persons on grounds of race, color, creed, familial status, handicap, sex or national origin, including Title VI of the Civil Rights Act of 1964, Fair Housing Act, Executive Order 11063 and all regulations implementing those laws.

2. If the Project receives any form of direct Federal financial assistance, comply with the provisions of Section 504 of the Rehabilitation Act of 1973, as amended, the Age Discrimination Act of 1975 and all regulations and administrative instructions implementing these laws. The Agent understands that these laws and regulations prohibit discrimination against applicants or tenants who are handicapped or of a certain age.

3. Furnish HUD's Office of Fair Housing and Equal Opportunity any reports and information required to monitor the Project's compliance with HUD's fair housing and affirmative marketing requirements (including form HUD-935.2, if applicable).

4. Not discriminate against any employee, applicant for employment or contractor because of race, color, handicap, religion, sex or national origin.

5. Provide minorities, women and socially and economically disadvantaged firms equal opportunity to participate in the Project's procurement and contracting activities.

6. If the Project receives any form of direct Federal financial assistance, comply with Section 3 of the Housing and Urban Development Act of 1968 and its implementing regulations. The Agent understands that this law and the regulations require the Project to make training, employment and contracting opportunities available, to the greatest extent feasible, to lower-income residents and small businesses in the area of the Project.

K. The Agent certifies that they have read and understand HUD's definition of "identity-of-interest," as set forth in Program Obligations, and that the statement(s) checked and information entered below are true. (Check box 1 or 2)

  1. ☐ No Identity-of-Interest exists between any of the following parties: (i) the Borrower and Agent; (ii) Operator and Agent; (iii) any individuals or companies that regularly do business with the Project and the agent; and (iv) to the best of Management Agent's knowledge, any individuals or companies that regularly do business with the Project and the Borrower or Operator.

  2. ☒ Only the individuals and companies listed below have an Identity-of-Interest with Agent. (Show the name of the individual or company; list the services rendered; and describe the nature of the Identity-of-Interest relationship. Attach additional sheets, if necessary.)

  **Alton Real Estate, Inc., Borrower. Common ownership directly or through related affiliates.**

  **Bravo Care of Alton, Inc., Operator. Common ownership directly or through related affiliates owned or controlled by Rene Yampol not individually but as trustee, Hillel Yampol, Hinde Feiner and/or Zvi Feiner.**

  **Bravo Nursing Home Services, Inc., implement the Facility's existing policies and procedures manuals in areas such as resident administrative services, activities, bookkeeping, charge nurse training, dietary procedure, emergency procedures, housekeeping, guest care, laundry, medical records, orientation and job training, safety and social services. Common ownership directly or through related affiliates owned or controlled by Rene Yampol not individually but as trustee, Hillel Yampol, Hinde Feiner and/or Zvi Feiner.**

  **Senior Living Services, Inc., provider of general maintenance and construction services. Common ownership directly or through related affiliates directly or through related affiliates owned or controlled by Rene Yampol not individually but as trustee, Hillel Yampol, Hinde Feiner and/or Zvi Feiner.**

L. The Operator or Borrower must obtain prior written approval from HUD for making material amendments to the Management Agreement. Any material amendment to the Management Agreement must be acceptable to HUD in accordance with Program Obligations.

M. The Agent certifies and agrees to submit updated information to HUD about the Agent whenever there is a significant change in the organization or operations of the Agent.

N. "Program Obligations" means (1) all applicable statutes and any regulations issued by HUD that apply to the Project, including all amendments to such statutes and regulations, as they become effective, except that changes subject to notice and comment rulemaking shall become effective only upon completion of the rulemaking process, and (2) all current requirements in HUD handbooks and guides, notices, and mortgagee letters that

apply to the Project, and all future updates, changes and amendments thereto, as they become effective, except that changes subject to notice and comment rulemaking shall become effective only upon completion of the rulemaking process, and provided that such future updates, changes and amendments shall be applicable to the Project only to the extent that they interpret, clarify and implement terms in this Agreement rather than add or delete provisions from such document. Handbooks, guides, notices, and mortgagee letters are available on HUD's official website: (http://www.hud.gov/offices/adm/hudclips/index.cfm or a successor location to that site).

**Warnings:**

There are fines and imprisonment—$10,000/5years—for anyone who makes false, fictitious, or fraudulent statements or entries in any matter within the jurisdiction of the Federal Government (18 U.S.C 1001). There are fines and imprisonment—$250,000/5years—for anyone who misuses rents & proceeds in violation of HUD regulations relative to this Project. This applies when the mortgage note is in default or when the Project is in a nonsurplus cash position (12 U.S.C 1715z-9). HUD may seek a "double damages" civil remedy for the use of assets or income in violation of any Regulatory Agreement or any applicable HUD regulations (12 U.S.C 1715z-4a).

---

Borrower or Operator hereby certify that the statements and representations contained in this certification and all supporting documentation thereto are true, accurate, and complete and that each signatory has read and understands the terms of this Agreement. This instrument has been made, presented, and delivered for the purpose of influencing an official action of HUD in insuring the Loan, and may be relied upon by HUD as a true statement of the facts contained therein.

**OPERATOR:**

**Bravo Care of Alton, Inc.,**
an Illinois corporation

By: _____
Hillel Yampol, Secretary
Date: December 30, 2013


**MANAGEMENT AGENT:**

**Midwest Administrative Services, Inc.,**
an Illinois corporation

By: _____
Hillel Yampol, Secretary
Date: December 30, 2013

| U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT ||
|---|---|
| ☐ The proposed Management Agreement received by HUD on _____ and the Management Fees as set forth in this Certification comply with Program Obligations: ||
| Authorized ORCF Approval Signature: | Date: |